IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JUNG BEA HAN,
      Plaintiff,

vs.                              Case No.: 3:09cv295/LAC/EMT

NICOLE McDONALD
and W. RICHARD FANCHER,
      Defendants.
_____/

## REPORT AND RECOMMENDATION

Plaintiff, a non-prisoner proceeding pro se, commenced this action by filing a complaint for damages pursuant to 42 U.S.C. § 1983 (Doc. 1). Plaintiff subsequently filed a Second Amended Complaint (Doc. 12). The filing fee has been paid. Defendants filed a motion to dismiss (*see* Docs. 24, 33, 38), Plaintiff filed a response in opposition (Docs. 25, 39). Plaintiff then filed a motion for summary judgment and a supporting memorandum (Doc. 26, 32). Defendants filed a response in opposition (Doc. 27).

Plaintiff names two Defendants in this action: Nicole McDonald, an employee of the Florida Department of Environmental Protection (FDEP), and W. Richard Fancher, District Director of the FDEP (*see* Doc. 12 at 1, 2). Plaintiff claims that Defendants violated his Fifth Amendment rights by "intentionally harrass[ing]" him "on the ground of bias under their conscious superiorism [sic] that an oriental dry cleaner labor worker is stupid" (*id.* at 5). Plaintiff alleges that on January 23, 2007, Defendant McDonald conducted an environmental inspection of Plaintiff's dry cleaning store (*id.* at 5–6). Ms. McDonald asked Plaintiff whether he wished to pay a penalty or appear in court, and when Plaintiff complained, Ms. McDonald left in a "bad mood" (*id.* at 5-6, 10). Two days later, Defendant McDonald returned with two law enforcement officers and the owner of the property on which Plaintiff's store is located (*id.* at 6). The officers charged Plaintiff with two misdemeanor

violations: (1) failure to comply with the "secondary containment" requirements of Florida Statutes § 376.3078(9)(a) or (b), and (2) failure to maintain records of hazardous waste disposal as required by Florida Administrative Code Rule 62-730.630(4) (*id.*). The matter went to court, but the case was dismissed (*id.*). Several months later, the property owner evicted Plaintiff because Plaintiff refused to sign a consent order proposed by the FDEP (*id.* at 6–7).

Plaintiff alleges that in February of 2009, the property owner filed a civil suit against him, apparently to recover costs incurred in environmental clean-up of the property (*id.* at 7). On March 5, 2009, the FDEP issued a Notice of Violation, Orders for Corrective Action, and Administrative Penalty Assessment against Plaintiff (*id.*). Plaintiff filed a response contending the violations should be dismissed based upon the doctrine of res judicata (*id.*). In June of 2009, an administrative law judge adopted the Notice of Violation, Orders for Corrective Action, and Administrative Penalty Assessment (*id.*).

Plaintiff claims that Defendant Fancher violated the Double Jeopardy Clause of the Fifth Amendment by issuing the Notice of Violation, Orders for Corrective Action, and Administrative Penalty Assessment after the state court had previously dismissed the criminal case based upon the same violations (*id.* at 7–10, 15). Plaintiff claims that Defendant McDonald deprived him of his right to operate his dry cleaning business by retaliating against him for his complaining when she advised him that he would have to pay a penalty or go to court (*id.* at 10–11). Plaintiff alleges Ms. McDonald caused him to be evicted from the property because she told the property owner that if he did not evict Plaintiff, he (the property owner) would be responsible for all costs (*id.* at 11). Plaintiff states Ms. McDonald charged him with contaminating the soil without proof (*id.* at 12). He states he hired two companies to test the soil, and one company concluded there was contamination, but the other company concluded there was no contamination (*id.* at 12–13). Plaintiff states he was evicted before he had an opportunity to defend the violations (*id.* at 13–14). Plaintiff contends because there was a factual dispute as to whether there was contamination, the FDEP's final order violated Florida Statutes § 90.202(12)[1] (*id.* at 12–14).

---

[1] Section 90.202(12) provides that a court may take judicial notice of "facts that are not subject to dispute because they are capable of accurate and ready determination by resort to sources whose accuracy cannot be questioned." Fla. Stat. § 90.202(12).

As relief for the alleged Fifth Amendment violations, Plaintiff seeks compensatory damages for emotional distress and punitive damages in the amount of $100,000.00 from Defendant Fancher and $150,000.00 from Defendant McDonald (*id.* at 16).

Defendants seeks dismissal of this action on grounds of insufficiency of service of process, lack of jurisdiction based upon the Rooker-Feldman doctrine, and failure to state a claim under § 1983 (Doc. 24, 33, 38). Plaintiff contends he properly served Defendants, and the Rooker-Feldman doctrine is inapplicable (Docs. 25, 39). Additionally, in Plaintiff's motion for summary judgment and supporting memorandum, he argues he is entitled to judgment as a matter of law on each of his constitutional claims; therefore, the undersigned has considered those arguments in determining whether Plaintiff's complaint is subject to dismissal for failure to state a claim.

The undersigned will first address Defendants' jurisdictional argument that Plaintiff's claims are barred by the Rooker-Feldman doctrine. The Rooker-Feldman doctrine places limits on the subject matter jurisdiction of federal district courts and courts of appeal over certain matters related to previous state court litigation. *See* Rooker v. Fidelity Trust Co., 263 U.S. 413, 415–16, 44 S. Ct. 149, 150, 68 L. Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476–82, 103 S. Ct. 1303, 1311–15, 75 L. Ed. 2d 206 (1983). The Eleventh Circuit has identified the following four criteria that must be met for the Rooker-Feldman doctrine to bar a district court's jurisdiction:

> (1) the party in federal court is the same as the party in state court; (2) the prior state court ruling was a final or conclusive judgment on the merits; (3) the party seeking relief in federal court had a reasonable opportunity to raise its federal claims in the state court proceedings; and (4) the issue before the federal court was either adjudicated by the state court or was inextricably intertwined with the state court's judgment.

Amos v. Glynn County Bd. of Tax Assessors, 347 F.3d 1249, 1265 n.11 (11th Cir. 2003) (internal citations omitted). Proper application of the Rooker-Feldman doctrine was clarified by the United States Supreme Court in Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 125 S. Ct. 1517, 1521–22, 161 L. Ed. 2d 454 (2005). The Court stated:

> The Rooker-Feldman doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district

court proceedings commenced and inviting district court review and rejection of those judgments.

*Id.*, 544 U.S. at 284. In Exxon Mobil, the Supreme Court held that the doctrine did not apply because the federal suit was filed before the state court judgments were rendered. *Id.*

In light of Exxon Mobil, the Eleventh Circuit considered the application of Rooker-Feldman in Nicholson v. Shafe, 558 F.3d 1266, 1272 (11th Cir. 2009). In Nicholson, the Eleventh Circuit adopted the rule followed by several other circuits "that state proceedings have not ended for purposes of Rooker-Feldman when an appeal from the state court judgment remains pending at the time the plaintiff commences the federal court action that complains of injuries caused by the state court judgment and invites review and rejection of that judgment." *Id.* (citing Guttman v. Khalsa, 446 F.3d 1027 (10th Cir. 2006), Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17 (1st Cir. 2005), Dornheim v. Sholes, 430 F.3d 919 (8th Cir. 2005)). The Eleventh Circuit explained that "confining the scope of the Rooker-Feldman doctrine to instances where the state proceedings have ended, in line with both the Rooker and Feldman cases," heeds the Supreme Court's warning that the doctrine is limited and should be applied narrowly. *Id.* (citing Exxon Mobil, 544 U.S. at 283). Subsequently, in Green v. Jefferson County Com'n, 563 F.3d 1243 (11th Cir. 2009), a case relied upon by Defendants, the Eleventh Circuit held that the Rooker-Feldman doctrine did not divest the federal district court of jurisdiction where an appeal was pending in the state court action at the time the plaintiffs initiated the federal court action. *Id.* at 1250.

In the instant case, the FDEP issued a final order in June 2009 (*see* Doc. 12 at 7). Plaintiff appealed the order to the Florida First District Court of Appeal (First DCA) (*see* Doc. 33). Plaintiff filed the instant federal action on July 10, 2009 (*see* Doc. 1 at 1). On November 20, 2009, the First DCA affirmed the FDEP's final order (*see* Doc. 33, attachment). On December 29, 2009, the Florida Supreme Court dismissed Plaintiff's petition for review (*see* Doc. 38, attachment). Because an appeal of the FDEP's order was pending in the state court at the time Plaintiff filed the instant case, the state court proceedings had not ended for purposes of Rooker-Feldman, as clarified by Exxon Mobil and Nicolson. *See* Green, 563 F.3d at 1250. Accordingly the Rooker-Feldman doctrine did not divest this court of jurisdiction. *See id.*

The court will next address Defendants' contention that Plaintiff has failed to state a cause of action under 42 U.S.C. § 1983 (*see* Doc. 24 at 3). In applying the standard for dismissal for failure to state a claim under Rule 12(b)(6), the allegations of the complaint are taken as true and are construed in the light most favorable to Plaintiff. <u>Davis v. Monroe County Bd. Of Educ.</u>, 120 F.3d 1390, 1393 (11th Cir. 1997). The complaint may be dismissed if the facts as pled do not state a claim to relief that is plausible on its face. *See* <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 127 S. Ct. 1955, 1968–69, 1974, 167 L. Ed. 2d 929 (2007) (retiring the often-criticized "no set of facts" language previously used to describe the motion to dismiss standard and determining that because plaintiffs had "not nudged their claims across the line from conceivable to plausible," the complaint must be dismissed).

Initially, Defendants are correct in their contention that to the extent Plaintiff sues them in their official capacity, Plaintiff's claims are barred by Eleventh Amendment immunity. A suit against a state employee in his or her official capacity is deemed to be a suit against the state for Eleventh Amendment purposes. <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 71, 109 S. Ct. 2304, 105 L. Ed. 2d 45, 58 (1989). Generally, absent waiver or express congressional abrogation, the Eleventh Amendment prohibits a suit against a state in federal court. <u>Kentucky v. Graham</u>, 473 U.S. 159, 167 n. 14, 105 S. Ct. 3099, 87 L. Ed. 2d 114 (1985); <u>Gamble v. Florida Department of Heath and Rehabilitative Services</u>, 779 F.2d 1509, 1511 (11th Cir. 1986). Hence, Defendants are entitled to Eleventh Amendment immunity to the extent Plaintiff sues them in their official capacities.

Additionally, to the extent Plaintiff sues Defendants in their individual capacities, Defendants correctly contend Plaintiff has failed to allege a deprivation of a federally protected right. The only federally protected rights asserted by Plaintiff are his rights under the Fifth Amendment. However, it is well established that the provisions of the Fifth Amendment apply only to the federal government, *see* <u>Riley v. Camp</u>, 130 F.3d 958, 972 n.19 (11th Cir. 1997). Here, Plaintiff alleges no federal participation in the pertinent events. Accordingly, his Fifth Amendment claims are due to be dismissed.

Liberally construing Plaintiff's pro se complaint as bringing claims under the due process clause of the Fourteenth Amendment, Plaintiff's allegations fail to state a claim for relief that is

plausible on its face. Plaintiff claims that Defendants violated constitutional protections against double jeopardy by imposing a civil penalty, that is, entry of the final administrative order adopting the Notice of Violation, Orders for Corrective Action, and Administrative Penalty Assessment and directing Plaintiff to comply with its provisions, after the criminal misdemeanor case based upon the same violations was dismissed.

The Double Jeopardy Clause provides that no "person [shall] be subject for the same offence to be twice put in jeopardy of life or limb." The Supreme Court has long recognized that the Double Jeopardy Clause does not prohibit the imposition of all additional sanctions that could, "in common parlance," be described as punishment. *See* Hudson v. United States, 522 U.S. 93, 98–99, 118 S. Ct. 488, 139 L. Ed. 2d 450 (1997) (internal quotation marks omitted). The Clause protects only against the imposition of multiple criminal punishments for the same offense, Helvering v. Mitchell, 303 U.S. 391, 399, 58 S. Ct. 630, 82 L. Ed. 917 (1938), and then only when such occurs in successive proceedings, *see* Missouri v. Hunter, 459 U.S. 359, 366, 103 S. Ct. 673, 74 L. Ed. 2d 535 (1983).

Whether a particular punishment is criminal or civil is, at least initially, a matter of statutory construction. Helvering, *supra*, at 399. A court must first ask whether the legislature, "in establishing the penalizing mechanism, indicated either expressly or impliedly a preference for one label or the other." United States v. Ward, 448 U.S. 242, 248, 100 S. Ct. 2636, 65 L. Ed. 2d 742 (1980). Even in those cases where the legislature "has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect," *id.*, at 248–49, as to "transfor[m] what was clearly intended as a civil remedy into a criminal penalty," Rex Trailer Co. v. United States, 350 U.S. 148, 154, 76 S. Ct. 219, 100 L. Ed. 149 (1956).

In making this latter determination, the factors listed in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168–69, 83 S. Ct. 554, 567–68, 9 L. Ed. 2d 644 (1963), provide useful guideposts, including: (1) "[w]hether the sanction involves an affirmative disability or restraint"; (2) "whether it has historically been regarded as a punishment"; (3) "whether it comes into play only on a finding of scienter"; (4) "whether its operation will promote the traditional aims of punishment-retribution and deterrence"; (5) "whether the behavior to which it applies is already a crime"; (6) "whether an alternative purpose to which it may rationally be connected is assignable for it"; and (7) "whether

it appears excessive in relation to the alternative purpose assigned." It is important to note, however, that "these factors must be considered in relation to the statute on its face," *id.* at 169, and "only the clearest proof" will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty, <u>Ward</u>, 448 U.S. at 249 (internal quotation marks omitted).

Florida's pollution control laws provide that it is a violation of Chapter 403 to violate or fail to comply with any rule, regulation, order, permit, or certification adopted or issued by the FDEP. Fla. Stat. § 403.161(1)(b). The statutory scheme provides for the imposition of criminal liability for violations of Chapter 403, *see* Fla. Stat. § 403.161(2–5), and it provides the FDEP with judicial and administrative remedies for enforcing environmental protection laws, *see* Fla. Stat. § 403.121. Florida Statutes section 403.121 provides, in relevant part:

> (2) Administrative remedies:
> . . . .
> (b) If the department has reason to believe a violation has occurred, it may institute an administrative proceeding to order the prevention, abatement, or control of the conditions creating the violation or other appropriate corrective action. . . . [T]he department shall proceed administratively in all cases in which the department seeks administrative penalties that do not exceed $10,000 per assessment as calculated in accordance with subsections (3), (4), (5), (6), and (7).

Fla Stat. § 403.121(2)(b). Subsections (3–7) of that statute provide for the assessment of administrative penalties, in amounts set forth therein. Fla Stat. § 403.121(2)(b)(3–7). The statute further provides, "Nothing herein shall be construed as preventing any other legal or administrative action in accordance with law." Fla Stat. § 403.121(2)(g).

The undersigned concludes, for several reasons, that the Florida legislature intended to impose civil penalties in section 403.121(2–7). First, although this statute contains no language explicitly categorizing the sanctions as "civil," it states the FDEP may "order the prevention, abatement, or control of the conditions creating the violation [of Florida's pollution control laws] or other appropriate corrective action" and impose an "administrative" penalty not to exceed $10,000.00. Fla. Stat. § 403.121(2)(a, b). Second, the authority to order corrective action and assess an administrative penalty is conferred upon the FDEP, an administrative agency. *See* <u>Hudson</u>, 522 U.S. at 103. Third, section 403.121(2)(a) creates an "administrative proceeding" rather than a criminal proceeding. Finally, the provisions of Chapter 403 establishing criminal penalties requires

a finding of scienter or culpable negligence, namely, that the person willfully or with "reckless indifference or gross careless disregard" committed a violation; however, corrective action may be ordered and administrative penalties assessed for unintentional acts or conduct which is not the product of culpable negligence. *See* § 403.121, 403.161(3). Thus, the legislature has clearly implied a preference that the penalties in section 403.121 be labeled as civil.

Additionally, there is little evidence, much less the clearest proof required in Ward and Hudson, suggesting that either FDEP monetary penalties or orders requiring corrective action are "so punitive in form and effect as to render them criminal" despite the legislative preference that they be deemed civil. *See* Hudson, 522 U.S. at 104 (internal quotation marks omitted). Neither monetary penalties nor orders requiring corrective action have historically been viewed as punishment. Requiring a polluter to bring himself into compliance with pollution control laws, thereby protecting the area from further pollution, is characteristically free of the punitive criminal element. *Cf.* Hudson, 522 U.S. at 104 (revocation of a privilege voluntarily granted, such as a debarment from participating in a certain industry, is free of punitive criminal element). Similarly, the administrative penalty does not render section 403.121 criminal. "[T]he payment of fixed or variable sums of money is a sanction which has been recognized as enforcible [sic] by civil proceedings since the original revenue law of 1789." Hudson, 522 U.S. at 104 (internal quotation marks omitted). Additionally, the sanctions imposed do not involve an "affirmative disability or restraint," as that term is normally understood. While Plaintiff has been directed to take certain corrective actions, that is "certainly nothing approaching the 'infamous punishment' of imprisonment." *Id.* Furthermore, as previously discussed, neither sanction comes into play only on a finding of scienter; the orders for corrective action and assessment of administrative penalties come into play regardless of the violator's state of mind. Although the conduct for which corrective orders and administrative penalties are imposed may also be criminal (and in this case, according to Plaintiff, were the basis for criminal charges), this fact is insufficient to render the monetary penalties and corrective orders criminally punitive, particularly in the double jeopardy context. *See* Hudson, 522 U.S. at 105 (citations omitted). Finally, the undersigned recognizes that the imposition of monetary penalties and orders requiring corrective action will deter others from emulating Plaintiff's conduct, a traditional goal of criminal punishment, but "the mere presence of this purpose

is insufficient to render a sanction criminal, as deterrence may serve civil as well as criminal goals." Hudson, 522 U.S. at 105.

In sum, there is very little showing, to say nothing of the "clearest proof" required by Ward and Hudson, that FDEP monetary penalties and orders for corrective action are criminal. Therefore, the Double Jeopardy Clause did not bar institution of the administrative action, issuance of corrective orders, and assessment of administrative penalties after the criminal proceeding had been dismissed. Accordingly, the facts as pled do not state a claim to relief that is plausible on its face with regard to Plaintiff's double jeopardy claim against Defendants.

Liberally construing Plaintiff's pro se complaint, he also appears to assert that Defendants violated his due process rights. He contends the administrative action was arbitrary, and Ms. McDonald initiated it in retaliation for his complaining when she advised him of the results of her inspection and inquired whether he intended to pay the penalties or appear in court. The Due Process Clause of the Fourteenth Amendment provides that no state "shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions "regardless of the fairness of the procedures used to implement them." Daniels v. Williams, 474 U.S. 327, 331, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986). "The substantive component of the Due Process Clause protects [only] those rights that are 'fundamental,' that is, rights that are 'implicit in the concept of ordered liberty.'" Behrens v. Regier, 422 F.3d 1255, 1264 (11th Cir. 2005) (quoting McKinney v. Pate, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc )). The Eleventh Circuit has further explained that "[f]undamental rights are those rights created by the Constitution." Greenbriar Village, L.L.C. v. Mountain Brook, City, 345 F.3d 1258, 1262 (11th Cir. 2003). Property rights would not be fundamental rights since they are based on state law. *See id.*; *see, e.g.*, Busse v. Lee County, Fla, 317 Fed. Appx. 968, 973 (11th Cir. 2009) (unpublished). Plaintiff thus could not bring a viable substantive due process claim based on the alleged denial of a state-defined property right. Additionally, in cases involving non-custodial relationships, such as here, a government actor's conduct that would amount to an intentional tort under state law only qualifies as a substantive due process violation if it is arbitrary or "shocks the conscience." *See* Tinker v. Beasley, 429 F.3d 1324, 1328–29 (11th Cir. 2005) (concluding that police officers' falsely informing

a suspect about the status of her legal representation before questioning her about a murder did not "shock the conscience" so as to violate the suspect's substantive due process rights).

In the instant case, Plaintiff questions the rationale of Defendant McDonald's initiating the administrative proceedings, alleging that she did so in retaliation for his complaining when she advised him of the violations she observed during her inspection and gave him a choice of paying the penalty or proceeding to court. However, Ms. McDonald's initiating formal proceedings after it became clear from Plaintiff's reaction that the dispute could not be resolved in a less formal manner does not plausibly suggest that she was acting arbitrarily or in a manner that otherwise "shocks the conscience." Because Plaintiff fails to allege the deprivation of a fundamental right, much less conduct that was arbitrary or "shocks the conscience," his substantive due process claim also fails on its face. *See* Behrens, 422 F.3d at 1264; *see also* Tinker, 429 F.3d at 1328–29.

The Due Process Clause also includes a procedural element. "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." Arrington v. Helms, 438 F.3d 1336, 1347 (11th Cir. 2006) (internal quotation marks omitted) (quoting Carey v. Piphus, 435 U.S. 247, 259, 98 S. Ct. 1042, 1050, 55 L. Ed. 2d 252 (1978)). Thus, a claim alleging the denial of procedural due process, under 42 U.S.C. § 1983, requires proof of three elements: "(1) a deprivation of a constitutionally-protected liberty or property interest; (2) state action; and (3) constitutionally-inadequate process." *Id.* (quotation omitted). A procedural due process violation is not complete, however, "unless and until the State fails to provide due process." McKinney, 20 F.3d at 1557 (internal quotation marks omitted) (citing Zinermon v. Burch, 494 U.S. 113, 110 S. Ct. 975, 983, 108 L. Ed. 2d 100 (1990)); *see also* Cotton v. Jackson, 216 F.3d 1328, 1331 (11th Cir. 2000) ("It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives rise to a federal procedural due process claim."). Therefore, in determining whether a plaintiff has stated a valid procedural due process claim, the court must assess "whether the available state procedures were adequate to correct the alleged procedural deficiencies." Cotton, 216 F.3d at 1331 (citations omitted); *see also* McKinney, 20 F.3d at 1557 ("[O]nly when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise.").

In the instant case, assuming arguendo that Plaintiff properly alleged the deprivation of a constitutionally-protected property interest, he failed to allege either a "constitutionally-inadequate process" or that Defendants Fancher and McDonald failed to provide adequate procedures, and he has not alleged that there was no state court recourse available to correct action by Defendants. Indeed, he alleges he received notice of the violations from the FDEP, an opportunity to contest them in an administrative proceeding, and review of the administrative decision by the Florida courts. These allegations do not state a procedural due process claim. Furthermore, the Eleventh Circuit has explained that the state must have the opportunity to "remedy the procedural failings of its subdivisions and agencies in the appropriate fora-agencies, review boards, and state courts," before being subject to a claim alleging a procedural due process violation. Cotton, 216 F.3d at 1331; *see also* Horton v. Board of County Com'rs of Flagler County, 202 F.3d 1297, 1300 (11th Cir. 2000). Thus, Plaintiff's allegations fail to state a violation of procedural due process.

Finally, even if Plaintiff's allegations were liberally construed as claiming a violation of his equal protection rights, his allegations fail to state a constitutional claim. The Fourteenth Amendment forbids states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "[T]o properly plead an equal protection claim, a plaintiff need only allege that through state action, similarly situated persons have been treated disparately." Thigpen v. Bibb County, 223 F.3d 1231, 1237 (11th Cir. 2000) *abrogated on other grounds by* National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 S. Ct. 2061, 153 L. Ed. 2d 106 (2002). In the instant case, Plaintiff does not allege that persons were similarly situated to him and received more favorable treatment. Therefore, he has failed to plead an equal protection claim.

Accordingly, it is respectfully **RECOMMENDED**:

1. That Defendants' motion to dismiss (Doc. 24) be **GRANTED**.

2. That Plaintiff's claims against Defendants be **DISMISSED** for failure to state a claim upon which relief may be granted, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

3. That all pending motions be **DENIED** as moot.

4. That this case be **DISMISSED** and the clerk be directed to close the file.

At Pensacola, Florida this <u>2nd</u> day of February 2010.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

## <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).